TO BE PUBLISHED

# $\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$

## 2015-SC-000153-KB

KENTUCKY BAR ASSOCIATION                                           MOVANT

V.                              IN SUPREME COURT

JOHN GREENE ARNETT, JR.                                      RESPONDENT

## OPINION AND ORDER

The Respondent, John Greene Arnett, Jr., was admitted to the Kentucky Bar on October 21, 1976. His KBA Member Number is 01745 and his bar roster address is 6900 Houston Road, Building 600, Suite 23, P.O. Box 1178, Florence, Kentucky 41022. He is alleged to have committed numerous violations of the Rules of Professional Conduct. The Kentucky Bar Association's Board of Governors has recommended that he be permanently disbarred for his misconduct. This Court adopts the recommendation.

### I. Background

**A. Underlying conduct and charges.**

Arnett's misconduct came to light in the course of an investigation of his use of client funds by the Boone County Sheriff's Department. Arnett had been retained by Robert Shane Hamblin in February 2012 to represent him in a divorce proceeding and received $75,000.00 in marital funds to hold in trust pending final division of the couple's assets. Arnett placed the funds in his IOLTA account. As part of the divorce settlement, Hamblin was directed to pay his ex-wife one-half of the funds being held by Arnett. Hamblin instructed

Arnett to release those funds to the ex-wife. Arnett, however, refused to disburse the finds.

In November 2012, the client retained another attorney to finalize the divorce proceedings. That counsel notified Linda Talley Smith, Commonwealth's Attorney for Gallatin and Boone Counties, of the situation. Smith requested an investigation, which was conducted by Detective Joshua Quinn of the Boone County Sheriff's Department. The detective obtained the records of Arnett's trust account and found that the account was completely empty. *Inquiry Com'n v. Arnett*, 439 S.W.3d 168, 169 (Ky. 2014).

This led to a disciplinary proceeding. While the disciplinary matter was being investigated, Arnett was temporarily suspended from the practice of law as of August 21, 2014. *Id.* at 170. That suspension is still in effect.

The criminal investigation in Boone County had a domino effect. Several other victims were discovered, leading to a multiple-count felony indictment in the Boone Circuit Court in Criminal Action No. 14-CR-00368 on April 12, 2014, and five separate disciplinary actions against Arnett, which are the subject of this matter.[1]

### 1. KBA File 22465

Arnett represented an estate in Owsley County, Kentucky. The decedent owned land in Ohio, and Arnett contacted an Ohio attorney to file an ancillary proceeding in that state to have the property sold. The closing took place on January 17, 2013, and a check for the proceeds (approximately $110,000) was

---

[1] The disciplinary action that led to Arnett's temporary suspension is not included in this case.

issued and made payable to the estate. The executor signed an agreement for Arnett to hold the funds in an escrow account pending a determination of taxes potentially due in Ohio. In July 2013, Arnett was notified that no taxes were due from the Ohio portion of the estate, and in August of that year he advised the Ohio attorney that he was having an accountant review the matter. The Ohio attorney was unable to reach Arnett after that time. The funds were never properly disbursed.

This conduct served as a part of the basis for the felony indictment issued April 12, 2014, regarding theft by unlawful taking, $10,000 or more in violation of KRS 514.030.

The Inquiry Commission issued a two-count charge in this case alleging that Arnett violated SCR 3.130-8.4(b)[2] by failing to properly disburse the funds held in his escrow account in violation of KRS 514.030, and SCR 3.130-8.4(c)[3] by depositing client funds in his escrow account and then failing to make proper disbursement of those funds.

## 2. KBA File 22570

Arnett handled an automobile-accident case for Michael Romes. The original accident occurred in 1997, and the case was settled for $900,000. Respondent was entitled to a fee of $300,000 and took an additional $100,000, informing Romes that he was required to hold $100,000 in escrow in case the insurance company required a refund at some point in time. Romes did not

---

[2] SCR 3.130-8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

[3] SCR 3.130-8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

question the arrangement until he was informed in late 2013 that Arnett was in the Boone County jail and he spoke with the sheriff's detective handling the ongoing investigation. Romes was informed by the detective that Arnett's escrow accounts were essentially empty. Romes then filed a complaint with the Kentucky Bar Association.

Based on this conduct, the Inquiry Commission issued a three-count charge in this case alleging that Arnett violated SCR 3.130-1.5(c)[4] by failing to provide a written statement to his client showing the remittance to the client and its method of determination at the conclusion of the contingent fee matter; SCR 3.130-8.4(c)[5] by failing to properly handle or account for the $100,000 deposited in his escrow account and belonging to Romes; and SCR 3.130-8.4(b)[6] by committing theft by unlawful taking of more than $10,000 in violation of KRS 514.070.

### 3. KBA File 22678

Arnett handled a guardianship case in Boone District Court styled *In re Michael Mallory*, Case No. 01-H-00008. In the course of that representation Arnett received substantial funds to be held on behalf of Diana Mallory as the Guardian and Conservator for her husband, Michael Mallory. Certain bills were

---

[4] SCR 3.130-1.5(c) states: "Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination."

[5] SCR 3.130-8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[6] SCR 3.130-8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

4

not paid and falsified records were submitted to the Boone District Court, Probate Division, showing non-existent balances on the trust account containing the funds held in escrow. The indictment issued by the Boone Circuit Court charges that between 2005 and 2014 Arnett failed to disburse the sum of $291,341.16. The falsified statements consisted of four documents, originally from the First Financial Bank, that were altered and submitted to the Probate Court in 2010, 2011, 2012, and 2013. The initial complaint was filed by Judge Charles T. Moore who was handling the probate matter. Arnett did not respond to the bar complaint despite receiving notice that the Inquiry Commission required information about the complaint and that he could face an additional charge of misconduct for failing to respond.

Based on this conduct, the Inquiry Commission issued a four-count charge alleging that Arnett violated SCR 3.130-3.3(a)(3)[7] by tendering altered or forged bank statements to the Boone District Court; SCR 3.130-8.1(b)[8] by failing to respond to the bar complaint; SCR 3.130-8.4(b) by committing theft in violation of KRS 514.07 and four counts of criminal possession of a forged instrument in violation of KRS 516.060; and SCR 3.130-8.4(c) by misappropriating funds from the guardianship.

---

[7] SCR 3.130-3.3(a)(3) states a lawyer shall not knowingly "offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false."

[8] SCR 3.130-8.1(b) provides that a lawyer shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority."

5

## 4. KBA File 22697

Arnett was hired by Thomas Kennicott as counsel in a domestic-relations matter and was paid a retainer. In September 2013, Arnett requested an additional $3,000 to proceed with the matter. After paying that amount, Kennicott was unable to get in touch with Arnett with the exception of a single email dated October 15, 2013. Kennicott's complaint alleged that from that point forward no additional work was performed, none of his attempts to reach Arnett were successful, and he received no response to emails and phone calls. Kennicott also reported that he was required to hire new counsel and go into debt to pay the new counsel $4,000 to proceed and finalize the divorce case. Arnett did not respond to the bar complaint despite receiving notice that the Inquiry Commission required information about the complaint and that he could face an additional charge of misconduct for failing to respond.

Based on this conduct, the Inquiry Commission issued a four-count charge alleging that Arnett violated SCR 3.130-1.4(a)(4)[9] by failing to return calls or reply to emails from Kennicott about the status of his case; SCR 3.130-1.16(d)[10] by failing to refund the fees advanced to him that had not been earned because Arnett essentially abandoned the representation; SCR 3.130-8.1(b) by failing to respond to the bar complaint; and SCR 3.130-8.4(c) by

---

[9] SCR 3.130-1.4(a)(4) states that a lawyer shall "promptly comply with reasonable requests for information."

[10] SCR 3.130-1.16(d) states that "upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred."

6

collecting the $3,000 from Kennicott, performing no services to earn it, and yet failing to refund it.

### 5. KBA File 22721

In April 2013, Arnett was engaged by Terry Walker to represent her in a divorce. The divorce decree was entered in August of that same year. Following entry of the decree, a qualified domestic relations order (QDRO) was required. Walker was asked to pay Arnett an additional $1,500 for preparation of the QDRO for distribution of retirement assets. Arnett set multiple appointments for Walker to come to his office and sign the documents but cancelled each one the day before with an excuse. Walker emailed Arnett on no fewer than six occasions and telephoned at other times. On December 16, 2013, Ms. Walker asked for return of the $1,500 fee. The money was not returned.

Based on this conduct, the Inquiry Commission issued a six-count charge alleging that Arnett violated SCR 3.130-1.3[11] by failing to perform the services requested in a reasonable time after having been paid to do so; SCR 3.130-1.4(a)(4) by failing to return Walker's calls or emails inquiring about the status of her case; SCR 3.130-1.5(a)[12] by collecting the $1,500 fee, and then failing to do the work or return the fee; SCR 3.130-1.16(d) by failing to refund the advance fee after failing to perform the work for Walker and essentially abandoning the representation; SCR 3.130-8.1(b) by failing to respond to the

---

[11] SCR 3.130-1.3 states that "A lawyer shall act with reasonable diligence and promptness in representing a client."

[12] SCR 3.130-1.5(a) states: "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee."

7

bar complaint; and SCR 3.130-8.4(c) by collecting the fee from Walker, performing no services to earn it, and then failing to refund it.

## B. Procedural background

The charges were all served on Arnett. Early in the process, Arnett was represented by counsel, who communicated with the KBA. For example, in KBA File 22465, Arnett's counsel replied to the Inquiry Commission's initial complaint (as distinct from its later formal charge). And in one case, KBA File 22570, the Office of Bar Counsel received some communication with Arnett's lawyer requesting an extension of time to file an answer. No answer was filed, however. And no answer was filed in the other cases either. As a result, the cases were treated as cases of default under SCR 3.210 and were submitted directly to the Board of Governors. In KBA File Nos. 22465, 22570, 22678, 22697, the Board voted 18–0 (with two recusals) to find Arnett guilty of all the counts. In KBA File 22721, the Board voted 18–0 (with two recusals) to find Arnett guilty of five of the six counts; the Board voted 15–3 to find him not guilty of count III, which alleged that Arnett had charged an unreasonable fee.

The Board then turned to the sanction. The Board considered Arnett's disciplinary history, which consisted only of his having been temporarily suspended as of August 21, 2014 as a result of the criminal charges against him. The Board noted that the aggravating factors in the cases included Arnett's dishonest or selfish motive, and his substantial experience in the practice of law. The Board noted that the only mitigating factor was Arnett's absence of a prior disciplinary history. The Board then voted 18–0 to recommend permanent disbarment as the appropriate sanction.

8

## II. Discussion

Neither the KBA's Office of Bar Counsel nor Arnett has sought review by the Court under SCR 3.370(7). The next question, however, is whether this Court should undertake its own review of this matter under SCR 3.370(8). This Court agrees that Arnett is guilty of the misconduct as found by the Board of Governors. And, given the magnitude of Arnett's misconduct, which includes having misappropriated approximately $500,000 of client funds, this Court agrees that permanent disbarment is the appropriate sanction. Thus, this Court declines to undertake review pursuant to SCR 3.370(8), and the Board's decision is adopted in full under SCR 3.370(9)

### Order

ACCORDINGLY, IT IS ORDERED THAT:

1. John Greene Arnett, Jr., is found guilty of the above-described violations of the Rules of Professional Conduct as also found by the Board of Governors.

2. Arnett is permanently disbarred and his license to practice law in the Commonwealth of Kentucky is revoked.

3. As required by SCR 3.390, Arnett will, within 10 days after the issuance of this order of permanent disbarment, notify, by letter duly placed with the United States Postal Service, all courts or other tribunals in which he has matters pending, and all of his clients of his inability to represent them and of the necessity and urgency of promptly retaining new counsel. Arnett shall simultaneously provide a copy of all such letters of notification to the Office of Bar Counsel.

9

Arnett shall immediately cancel any pending advertisements, to the extent possible, and shall terminate any advertising activity for the duration of the term of suspension.

4. As stated in SCR 3.390(a), this order shall take effect on the 10th day following its entry. Arnett is instructed to promptly take all reasonable steps to protect the interests of his clients. He shall not accept new clients or collect unearned fees, and shall comply with the provisions of SCR 3.130-7.50(5).

5. In accordance with SCR 3.450, Arnett is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $714.54, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: June 11, 2015.

CHIEF JUSTICE